PEOPLE v DAVIS

1. HOMICIDE—MURDER—EVIDENCE—CIRCUMSTANTIAL EVIDENCE—ES-
   TABLISHING GUILT—INFERENCES OF FACT—WITNESSES—DEFENSE
   OF ALIBI—CREDIBILITY.

   Criminal guilt may be established through circumstantial evi-
   dence, and the Court of Appeals therefore will not substitute its
   judgment for that of the jurors on an inference of fact where,
   in a murder case, by defendant's own testimony if the jury
   disbelieved his defense of alibi no one else could possibly have
   inflicted the fatal injuries, where on the record the jury was
   entitled to believe a medical expert who testified for the prose-
   cution that the fatal injuries were the result of repeated
   beatings, and where the jury believed the medical expert and
   disbelieved defendant; circumstantial evidence if well authenti-
   cated can be more positive than direct evidence.

2. CONSTITUTIONAL LAW—RIGHT TO COUNSEL—INCOMPETENCE—ASSIST-
   ANCE OF COUNSEL.

   A counsel's incompetence must be grave to reach the constitu-
   tional level of no assistance of counsel.

3. WITNESSES—RES GESTAE WITNESSES—FAILURE TO PRODUCE—CRIMI-
   NAL LAW—EVIDENCE—DUE DILIGENCE TO LOCATE—DISCRETION
   —ABUSE OF DISCRETION—BURDEN OF PROOF.

   A determination of whether due diligence has been shown in the
   prosecution's efforts to locate and produce res gestae witnesses

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 880 *et seq.*
    40 Am Jur 2d, Homicide § 468.
[2] 21 Am Jur 2d, Criminal Law §§ 315, 321.
    Incompetency of counsel chosen by accused as affecting validity of
    conviction. 74 ALR2d 1390.
[3] 21 Am Jur 2d, Criminal Law § 251.
    29 Am Jur 2d, Evidence §§ 180, 186.
    58 Am Jur, Witnesses § 3.
[4] 21 Am Jur 2d, Criminal Law § 136.
    75 Am Jur 2d, Trial §§ 729 *et seq.,* 876 *et seq.*
[5] 63 Am Jur 2d, Prosecuting Attorneys § 27.
    75 Am Jur 2d, Trial §§ 192, 211 *et seq.*

is within the discretion of the trial judge, and a finding of due diligence will not be overturned unless a clear abuse of discretion is shown; the party attacking exercise of the discretion generally has the burden of showing such an abuse.

4. CRIMINAL LAW—INSTRUCTIONS TO JURY—LESSER INCLUDED OF-
FENSES—TRIAL STRATEGY—DEFENSE OF ALIBI—MUTUALLY EX-
CLUSIVE FINDINGS.

Failure to instruct the jury on lesser included offenses was not error where defendant did not request such instructions and where good trial strategy may have made a request for such instructions unwise; jurors may not be assumed to be so naive and imperceptive as not to recognize that if the defense is alibi, findings that the defendant was not there and that he committed a lesser offense are mutually exclusive.

5. HOMICIDE—MURDER—PROSECUTOR'S CLOSING ARGUMENTS—REFER-
ENCES TO DEFENDANT—FAIR COMMENT—LATITUDE FOR ARGU-
MENT—INFERENCES OF FACT.

It was not error for the prosecutor in a murder case during his summation in chief and rebuttal argument to the jury to refer to the defendant as a "brutal killer" and claim "he lied to you folks", where it would have been fair comment if the prosecutor had prefixed the statement with something like "from the evidence we contend you can find the defendant is a brutal killer and that he lied to you"; it cannot be error merely to express the same idea by changing the wording of the statement; prosecutors must be allowed reasonable latitude in arguing inferences from the facts on which they rely to establish guilt.

Appeal from Wayne, Charles S. Farmer, J. Submitted Division 1 October 8, 1974, at Detroit. (Docket No. 18917.) Decided January 8, 1975. Leave to appeal applied for.

Raybin Davis was convicted of second-degree murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick Carnovale,* Chief, Appellate Department, *Patricia J. Boyle,* Principal Attorney, Research, Training and Appeals, and

*Frederick R. Doetsch, Jr.,* Assistant Prosecuting Attorney, for the people.

*Barbara, Wisok, Tavoularis, Ruby & Domol, P. C.,* for defendant on appeal.

Before: Danhof, P. J., and Bronson and O'Hara,* JJ.

O'Hara, J. This is an appeal of right from a jury conviction of second-degree murder. MCLA 750.317; MSA 28.549.

The victim was a 21-month-old child. She had been left in the custody of the defendant by her mother between 4 and 5 p.m. of the day of her death.

She was, according to witnesses who saw her, in normal health and bore no recognizable evidence of beating, striking or other acts of violence. When the mother returned to the premises where she and the defendant were living she was told by neighbors that her daughter had been taken to a hospital. During the period of her absence several witnesses testified to seeing the child at different times apparently well and normal.

The defendant and the child were driven to the hospital by a neighbor. The child was dead on arrival. An autopsy revealed 25 ounces of blood in the abdomen from the liver, which was in the words of the pathologist "squashed and extensively torn". There were exterior indications of a severe beating. The immediate cause of death was the torn liver and resultant hemorrhages attributable to a blunt force impact.

The trial was lengthy and heated. The defense was alibi. The nature of the alibi was that defend-

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

ant left the premises to make a phone call and that on his return he found the child in training pants and changed them because they were wet. He testified that it was at this time he realized she was "ill". He removed her pajamas and put her in a dress for the trip to the hospital.

There is no point in discussing the plethora of disputed fact questions. The errors assigned are legal except as to the claim that the verdict was against the great weight of the evidence. We list them from defendant's brief, although not necessarily verbatim:

I. *Did the prosecutor's improper arguments during his closing argument and during rebuttal deprive defendant of a fair trial?*

II. *Was it error for the court to fail to instruct the jury on lesser included offenses?*

III. *Was it error for the court to excuse the prosecution from calling two endorsed res gestae witnesses?*

IV. *Was the appellant denied a fair trial due to lack of effective assistance of counsel?*

V. *Was the conviction for second-degree murder contrary to the great weight of the evidence?*

We discuss each but not seriatim.

We reject out of hand assignment of error number V. The case against the defendant was based entirely on circumstantial evidence. This is not only permissible, but some jurists and legal commentators regard such evidence as more trustworthy than direct testimony.

"Guilt may be established through circumstantial evidence * * * ." *People v Raetz,* 15 Mich App 404, 405; 166 NW2d 479 (1968), citing *People v Sobczak,* 344 Mich 465; 73 NW2d 921 (1955).

"Circumstantial evidence if well authenticated can be

more positive than direct evidence." *People v Iron,* 26 Mich App 235, 240; 182 NW2d 342 (1970).

Under the defendant's own testimony if the jury disbelieved his claimed temporary absence no one else could possibly have inflicted the fatal injuries. The 21-month-old child could not possibly have inflicted them on herself, accidentally or otherwise. The duly qualified pathologist—medical expert—testified they were the result of repeated beatings. Under this record the jury was entitled to believe him. Obviously, they did. Ours is not to substitute our judgment on this inference of fact for theirs. See *People v Palmer,* 392 Mich 370; 220 NW2d 393 (1974).

We find no merit in the claim of the denial of the effective assistance of counsel. Trial lawyers vary widely in their evaluation of over-objecting and thereby possibly generating jury hostility. Many feel that the practice creates the impression of seeking to withhold facts from jury consideration. The same divergence exists in regard to overkill in argument. The conduct of the defense in this case falls far short of the test established in *People v Degraffenreid,* 19 Mich App 702; 173 NW2d 317 (1969), and confirmed in *People v Lawrence,* 32 Mich App 591, 594; 189 NW2d 48, 50 (1971). As was said in *Lawrence:*

"Such incompetence must be grave indeed to be raised to the constitutional level of no assistance of counsel."

We reject assignment of error number IV.

We turn to assignment of error III, the excusing production of two res gestae witnesses by the court upon a showing of due diligence in an effort to locate them.

In *People v Bersine,* 48 Mich App 295; 210 NW2d 501 (1973), it was said in reliance on *People v Russell,* 27 Mich App 654; 183 NW2d 845 (1970), and *People v Garcia,* 39 Mich App 45; 197 NW2d 287 (1972), that the question of due diligence is within the discretion of the trial judge. The exercise of discretion will not be overturned unless a clear abuse is shown. Generally, the burden to show that abuse is on the party attacking the exercise of the discretion. Obviously, this discretion must be exercised with regard to defendant's right to a fair trial.

A prosecution witness testified in regard to repeated efforts to serve the witnesses with subpoenas. He further testified to inquiries made as to where they might be found. They certainly were not at their former place of residence. We cannot say there was an abuse of discretion by the trial judge.[1] We find no error which would support reversal in assignment III.

Assignment of error II raises the familiar oft-asserted claim of failure to charge on lesser included offenses. This was the defendant's choice. How then does he claim error in consequence thereof on review? It may very well be that trial counsel sensed the obvious weakness in asserting "no, I didn't do it, but if I did, I did it without the requisite elements of second-degree murder". Jurors may not be assumed to be so naive and imperceptive as not to recognize that if the defense relied on is alibi it is logically mutually exclusive

---

[1] The testimony of these two witnesses could not have been particularly crucial since their only connection with the crime was confined to driving defendant and decedent child to the hospital. Additionally, defense counsel not only did not raise an objection but affirmatively stated that he thought waiving production of this married couple rested within the trial court's discretion. In so holding we have given due consideration to the holding in *People v Robinson,* 390 Mich 629; 213 NW2d 106 (1973).

with a finding that the defendant was not there to find he committed a lesser offense. We find no reversible error in this claim.

Now to the final issue to be discussed: prosecutorial misconduct in both his summation in chief and rebuttal argument to the jury.

This is a sticky wicket. Reading our case law, intermediate and ultimate, some citation can usually be found to support whatever position is urged by either party.

It is apparent from the record that in this case the prosecution called the defendant's testimony into question in terms that were less than delicate. There is often little room in a murder trial for delicacy and semantic nuance.

Basically, there are two lines of authority concerning the limitations upon the prosecution.

The first is a strict limitation on the prosecutor. Defendant forcefully argues the point and cites *People v Tarpley,* 41 Mich App 227, 235–236; 199 NW2d 839 (1972), where the prosecutor remarked that "only lies come out of his mouth". This Court then held:

> "The prosecutor in his remarks to this jury relative to his belief in the defendant's guilt and his comments about not being able to believe anything said by the defendant and that 'only lies come out of his mouth' may very well have led the jury to suspend its own powers of judgment in reviewing the evidence before it. This was a call upon the jury to bring in a conviction on the opinion of the prosecuting attorney. We hold the remarks to be highly prejudicial and improper."

The holding of *Tarpley, supra,* was sustained by citing *People v Dane,* 59 Mich 550; 26 NW 781 (1886), for the proposition that statements of facts based upon personal knowledge of a prosecutor are presumably very persuasive as to the weight and

influence with the jury. It could result in resolving any doubt the jurors may have had by virtue of use of the prestige of the prosecutor's office. Further cited were *People v Ignofo,* 315 Mich 626; 24 NW2d 514 (1946), *People v Slater,* 21 Mich App 561; 175 NW2d 786 (1970), and *People v Montevecchio,* 32 Mich App 163; 188 NW2d 186 (1971), which relied on *People v Hill,* 258 Mich 79; 241 NW 873 (1932), for the proposition that the prosecutor may not state what he personally thinks or believes of defendant's guilt or credibility and if he has first hand knowledge of facts he should be sworn in as a witness, otherwise he should confine his argument to his official capacity and argue the evidence.

We read the holdings contra of more recent vintage that would allow the prosecution much more latitude. We considered the confusion over the limits between permissible and impermissible prosecutorial argument as expressed in *People v Thomas,* 36 Mich App 23; 193 NW2d 189 (1971).

Finally, we decided to go back and review what was said by some of the Big Four[2] of our jurisprudence and to ascertain if they had ever been expressly overruled.

We find they have not. We found Mr. Justice CAMPBELL speaking succinctly in a case where the prosecution stated outright that a witness lied. Objection was made. The trial court overruled the objection. The CAMPBELL opinion held:

"It can hardly be error to allow an idea to be expressed in language which is no stronger than other words which would convey the same meaning, and would yet be admissible on the issue." *Driscoll v People,* 47 Mich 413, 418; 11 NW 221 (1882).

---

[2] Comparable perhaps to the Four Horsemen of football fame in their field.

In *People v Wirth,* 108 Mich 307, 308–309; 66 NW 41 (1896), the prosecutor said: "I believe the evidence shows that they [the witnesses for the defense] are a lot of liars". The court responded to the assignment of error with:

"We are not aware of any decision which holds that an attorney may not state to the jury his belief that a witness is or is not entitled to credence, in a case where the testimony is conflicting, and the result depends upon which witnesses the jury find are truthful. A broad latitude must be allowed in such cases."

In this case the prosecution referred to the defendant as a "brutal killer" and claimed "he lied to you folks".

As Mr. Justice CAMPBELL points out, if the prosecution had prefixed the statement with something like "from the evidence we contend you can find the defendant is a brutal killer and that he lied to you", all decisions seem to agree this is fair comment.

We opt to strip away the facade as did Justice CAMPBELL and hold it cannot be error to express the same idea merely by changing the wording.

Prosecutors are not permitted to state that on their "solemn oaths" they believe the defendant guilty. Nor may they say that if the defendant were not guilty he would not be on trial.

Defendants can be convicted only on proof beyond a reasonable doubt and not on the personal belief of the prosecutor. The trial court must so charge. But prosecutors must in the words of the CAMPBELL court be allowed reasonable latitude in arguing inferences from the facts on which they rely to establish guilt. That we think was what was done in this case. We find no reversible error. The judgment of conviction is affirmed.

All concurred.