PEOPLE v PAGE

1. CRIMINAL LAW—ARGUMENT OF COUNSEL—DEFENDANT'S GUILT— PROSECUTOR—FINAL ARGUMENTS.

The prosecutor is free in final argument to relate the facts to his theory of the case, and say that certain evidence leads him to believe the defendant is guilty; however, he may not express a belief in the defendant's guilt without relating the belief to the evidence.

2. HOMICIDE—DEGREE OF GUILT—QUESTION OF FACT.

A determination of the degree of guilt of an accused is a fact question for the trier of fact to determine under established principles: (1) premeditation can be reasonably inferred from the circumstances surrounding the killing, (2) a defendant may not be found guilty of first-degree murder if he did not have an opportunity to subject the nature of his response to a second look or reflection, *i.e.*, one cannot instantaneously premeditate a murder, (3) a sufficient time lapse to provide an opportunity for a "second look" may be merely seconds, or minutes, or hours, or more, dependent on the totality of the circumstances surrounding the killing, and (4) where it is factually clear that there is no evidence of premeditation, the trier of fact may not consider a charge of first-degree murder.

3. HOMICIDE—FIRST-DEGREE MURDER—PREMEDITATION—FINDINGS OF FACT—REASONABLE DOUBT.

A jury's findings of premeditation will not be disturbed on appeal of a conviction of first-degree murder where there was sufficient evidence to allow a reasonable man to infer premeditation beyond a reasonable doubt.

4. CRIMINAL LAW—INSANITY—COMMENTS BY COUNSEL—DISPOSITION OF DEFENDANT.

Comments on the possible disposition of the defendant in a

REFERENCES FOR POINTS IN HEADNOTES
[1] 75 Am Jur 2d, Trial § 260 *et seq.*
[2] 40 Am Jur 2d, Homicide §§ 470, 471, 479.
[3] 40 Am Jur 2d, Homicide § 472.
[4] 21 Am Jur 2d, Criminal Law §§ 45, 53.

criminal trial should he be found not guilty by reason of insanity are not matters for a jury to consider; however, no error results where the damaging comments were elicited by the prosecutor from a defense witness and were limited to a brief dialogue, defense counsel made no objection and discussed disposition in his closing argument, and the court properly instructed the jury on the issues of insanity and possible disposition.

Appeal from Roscommon, Carl L. Horn, J. Submitted May 14, 1975, at Grand Rapids. (Docket No. 19987.) Decided August 12, 1975.

Leonard W. Page was convicted of first-degree murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert Hess,* Prosecuting Attorney (Prosecuting Attorneys Appellate Service, *Edward R. Wilson,* Director, and *Aloysius J. Lynch,* Special Assistant Attorney General, of counsel), for the people.

*Ralph H. Dinse,* for defendant.

Before: D. E. HOLBROOK, P. J., and ALLEN and D. E. HOLBROOK, JR., JJ.

D. E. HOLBROOK, P. J. On January 11, 1974 defendant-appellant Leonard Page was found guilty by a jury of first-degree murder. MCLA 750.316; MSA 28.548. He was sentenced to life imprisonment.

In the early hours of the morning in question defendant had seen his ex-wife, Martha Page, with another man in a local bar. Defendant had danced with her and bought a drink for her escort. Later,

about 3 a.m., as Mrs. Page and her date were saying good-night at her home, the defendant approached them with a gun and threatened to kill his ex-wife. After some discussion the defendant left, Mrs. Page went into the house and her escort left.

A short time later the defendant broke in Mrs. Page's house, ordered a friend of the decedent away from the telephone, and shot and killed the decedent, who had been his step-daughter.

Other facts and evidence will be set forth when pertinent to this opinion.

Defendant first argues that the prosecutor's closing argument denied the defendant fundamental due process of law and his right to a fair and impartial trial. Defendant bases this argument, to a large extent, on several statements made by the prosecutor during closing argument which are alleged to be statements of the prosecutor's personal belief in defendant's guilt. We note that as to most of the remarks no objection was raised at trial.

The general rule with regard to comments by the prosecutor is stated in *People v Humphreys,* 24 Mich App 411, 414; 180 NW2d 328, 329 (1970):

> "Although the prosecutor is free in final argument to relate the facts to his theory of the case, and in so doing say that certain evidence leads him to believe the defendant is guilty, * * * he may not express a belief in the defendant's guilt without relating the belief to the evidence." (Citations omitted.)

Without quoting extensively from the record, we find that when these remarks are reviewed in their entirety, the inescapable conclusion which must be drawn is that these remarks were inextri-

cably interwoven with references to the supporting evidence.[1]

Defendant next complains of the following remarks made by the prosecutor in his rebuttal to defendant's closing argument:

"I suppose I want to start out by talking to you in plain language that he is guilty. It is proper for me to say that I disagree with the insanity defense and apparently, they do not. The act he committed was wrong and they feel he should not be held accountable for that act. They said he could not resist the impulse to commit that act and he should not be held accountable for that act. *Based upon the evidence, I find little upon which you can base a decision or a verdict of not guilty by reason of insanity. That is your job. How I feel has nothing to do with it. You have to evaluate the testimony.*" (Emphasis supplied.)

No objection was made at trial to this statement by the prosecutor. Hence, in the absence of a miscarriage of justice there is no duty for this Court to consider the allegation of error on this appeal. *People v Ballenberger,* 51 Mich App 353; 214 NW2d 742 (1974). Nevertheless, we have examined the statement in question and have concluded that it was an opinion of the prosecutor based upon the evidence. Further, the prosecutor himself told the jury that his personal feelings did not control the case but that it was their job to decide the insanity issue. Finally, even in the event that the statement by the prosecutor was not proper, we believe it could have been totally cured by a proper curative instruction had objection been made. *People v Ballenberger, supra.*

We have examined these and all other issues

---

[1] This finding precludes any necessity for reliance on *People v Davis,* 57 Mich App 505; 226 NW2d 540 (1975), which would arguably have allowed such comments even without a relation to the evidence.

pertaining to the closing arguments of the prosecutor and have found them all to be without merit.

Defendant next argues that there was insufficient evidence of premeditation for the jury to return a verdict of first-degree murder. In order to deal with this issue, we turn to our opinion in *People v Meier,* 47 Mich App 179, 191–192; 209 NW2d 311, 318 (1973).

"Our own answer to the question of the appropriate rule to follow as to what constitutes premeditation in a first-degree murder case is not a definition. Rather, it is a reaffirmation of the role of the trier of fact in deciding the degree of guilt of an accused under the following established principles:

"(1) Premeditation can be reasonably inferred from the circumstances surrounding the killing;

"(2) A defendant may not be found guilty of first-degree murder if he did not have an opportunity to subject the nature of his response to a second look or reflection, *i.e.,* one cannot instantaneously premeditate a murder;

"(3) A sufficient time lapse to provide an opportunity for a 'second look' may be merely seconds, or minutes, or hours, or more, dependent on the totality of the circumstances surrounding the killing;

"(4) Where it is factually clear that there is *no* evidence of premeditation, the trier of fact may not consider a charge of first-degree murder. Attempting to further clarify this 'definition' in the past has, we believe, led to an invasion by the appellate courts into areas rightfully left to the trial court in its fact-finding processes * * * ." (Emphasis in original.)

Keeping the above principles in mind, we move to a review of some of the pertinent evidence. Theresa Savercool, a friend of the decedent, testified as follows on direct examination by the prosecutor:

"*Q.* Did Mr. Page say anything to anyone else in the house?

"*A.* It was pretty confusing. He was threatening to kill Martha, but he said he would kill us all that night, that morning.

\*   \*   \*

"*Q.* Was anything said between you and Mr. Page about the cigarette?

"*A.* Yes, he did. I asked him if I could get one and he said, 'Yes, I could and I'd better get one because it probably would be my last'.

\*   \*   \*

"*Q.* Did Mr. Page say anything to you in the dining room about the gun he had?

"*A.* Not that I remember. I don't remember.

"Just a minute! He said something about he had enough bullets with him, enough to kill every one of us that was in the house, that night, that morning."

Later, on redirect examination, the witness testified as follows:

"*Q.* Did the defendant on the night of the shooting speak directly to Zellma?

"*A.* I believe he told her to get out the way because he didn't want to kill her mother and her at the same time. He wanted her on the other side so he could kill Martha first.

"*Q.* He did say that?

"*A.* Yes."

There is also testimony that defendant told the decedent, "I'll start with you, Helen"; and that he had told Mrs. Page's escort earlier that his gun had five bullets in it.

While the above is not an exhaustive review of the testimony, we believe it is sufficient to show that there could exist a reasonable inference of an intent on the part of the defendant to kill every-

one present in the house that morning. This inference could have arisen from testimony that defendant had told one of the witnesses before he even entered the house that he had five bullets in his gun. The fact that defendant had sufficient time for a "second look" is evidenced by the fact that he had time to tell one of the witnesses to move out of his way, and to tell another one that she should smoke her last cigarette and finally from the fact that he had the time to notify the decedent beforehand that he was going to kill her.

Clearly this is not a case where there is a total lack of evidence upon which to base the determination of premeditation. The jury's findings in this regard will not be disturbed. *People v Rappuhn,* 55 Mich App 52; 222 NW2d 30 (1974), *People v Meier,* 47 Mich App 179; 209 NW2d 311 (1973), *People v Morrin,* 31 Mich App 301; 187 NW2d 434, *lv den* 385 Mich 775 (1971). There was sufficient evidence to allow a reasonable man to infer premeditation beyond a reasonable doubt. *People v Atley,* 392 Mich 298; 220 NW2d 465 (1974).

Defendant next claims that certain questioning by the prosecutor was prejudicial. The claim centers on the following dialogue between defendant's expert witness and the prosecutor:

"*Q.* What you are saying, then, Doctor, is that the defendant should be placed in an institution?

"*A.* Yes.

"*Q.* Doctor, how long would you estimate that he would remain in an institution if he were found not guilty by reason of insanity?

"*A.* Well, one-and-a-half to two years, but I don't agree with that. I have some question about that."

Defendant cites *People v Szczytko,* 390 Mich 278; 212 NW2d 211 (1973), for the proposition that

comments on the possible disposition of the defendant in a criminal trial are not matters for the jury to consider. Defendant's citation of *Szczytko* for that general proposition is correct; but we believe that on close examination, that case is authority against this defendant.

In *Szczytko* the prosecutor made statements in his closing argument to the effect that, if committed, defendant would gain his freedom in a short time merely by going through some legal paperwork. He persisted in this over repeated objection by defense counsel. In the instant case the damaging testimony was elicited from a defense witness and was more limited than the comments in *Szczytko.*

In *Szczytko,* defense counsel objected vigorously. In the instant case there was no objection, but rather defense counsel himself discussed disposition in such a case in his closing argument.

Finally, in both cases, the trial court gave essentially the same instructions to the jury on the issues of insanity and possible disposition. *People v Cole,* 382 Mich 695; 172 NW2d 354 (1969).

In short, this defendant makes out a much weaker case than did the defendant in *Szczytko.* If there was no error in the similar issue in that case, there is certainly none here.

We have examined defendant's other allegations of error and found them to be without merit.

Affirmed.