PEOPLE v BLACKSMITH

1. WITNESSES—CRIMINAL LAW—RES GESTAE WITNESSES—PRODUCTION AT TRIAL—EXCUSE—DUE DILIGENCE.

The nonproduction of res gestae witnesses at trial is excused where the prosecution makes reasonable efforts to locate the witnesses and exercises due diligence in attempting to locate and produce them.

2. WITNESSES—CRIMINAL LAW—PRODUCTION OF WITNESSES—DUE DILIGENCE—ABUSE OF DISCRETION.

The question of due diligence by a prosecutor in attempting to produce a res gestae witness is within the discretion of a trial court and will not be overturned unless a clear abuse is shown.

3. WITNESSES—CRIMINAL LAW—DEFENDANT AS WITNESS—CROSS-EXAMINATION—PRIOR CRIMINAL RECORD—DISCRETION.

Case law requiring reversal where a trial judge failed to recognize that he has discretion to preclude the prosecution from cross-examining a defendant concerning his past criminal record is not applicable where the record indicates that the judge did recognize that discretion and exercised it.

4. CRIMINAL LAW—ASSAULT—AUTOMOBILES—DANGEROUS WEAPONS—STATUTES.

An automobile, adapted to accomplishing an assault and capable of inflicting serious injury is, when so employed, a dangerous weapon within the meaning of the statute which prohibits felonious assault since the statute shows no preoccupation with either the size or the inherent dangerous propensities of the weapons enumerated (MCLA 750.82; MSA 28.277).

Appeal from Oakland, John N. O'Brien, J. Sub-

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 81 Am Jur 2d, Witnesses § 28 *et seq.*

[3] 21 Am Jur 2d, Criminal Law § 311.

[4] 7 Am Jur 2d, Automobiles and Highway Traffic § 296.

Automobiles as within descriptive terms of criminal or penal statutes or ordinances not specifically naming them. 129 ALR 387.

mitted December 3, 1975, at Lansing. (Docket No. 21936.) Decided December 10, 1975. Leave to appeal denied, 396 Mich 838.

Rejal Blacksmith was convicted of felonious assault. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief Appellate Counsel, and *David A. Potts,* Assistant Appellate Counsel, for the people.

*Arthur J. Tarnow,* for defendant.

Before: R. B. BURNS, P. J., and D. E. HOLBROOK and D. F. WALSH, JJ.

D. E. HOLBROOK, J. Defendant was convicted, by a jury, of the crime of felonious assault. MCLA 750.82; MSA 28.277. He was sentenced to 1-1/2 to 4 years in prison. He now appeals as of right.

Defendant's conviction arose out of a high speed chase on the I-96 and I-696 expressways. The chase involved defendant's car and five police cars. At trial, eight police officers gave testimony concerning the incident. The defendant himself was the only defense witness.

The first police car to begin pursuit of defendant on the date in question contained two troopers from the Michigan State Police. Both testified at trial. Their testimony tended to show that they began pursuit of defendant's vehicle after their radar indicated that it was traveling 98 miles per hour in a 70 mile an hour speed zone. They pursued defendant's vehicle, and signaled for him to stop. Defendant responded by accelerating, and when the police caught up with him again he swerved into the lane occupied by the state police

car forcing it into the median. The officers in the first car then radioed for help and resumed the chase. Soon thereafter, two more fully marked state police cars joined the pursuit. Also as a result of the radio call, a fully marked car from the Wixom City Police Department responded by blocking two of the eastbound lanes of the expressway on which the chase was taking place. This attempt to halt defendant's progress was unsuccessful, as he swerved around the blockade. At this point the Wixom City Police car joined the chase. Meanwhile, there was testimony from one of the officers in the more recently arrived state police cars that he had observed defendant's vehicle striking the police cars that were attempting to apprehend him "a couple of times".

The last car to enter the chase was a fully marked state police vehicle driven by a Trooper Walton who was accompanied by Trooper Webb. Defendant was convicted of assaulting these two officers with his vehicle. Responding to a radio call concerning the chase, the officers entered the freeway at a point ahead of the on-coming defendant and his pursuers. They pulled onto the freeway and attempted to stop the on-coming car. Unsuccessful in that attempt, they took up the pursuit. Traveling at speeds in excess of 120 miles an hour, they overtook the other vehicles and attempted to bring defendant's vehicle to a stop. Roof lights flashing and hood light on, the police car pulled up alongside of defendant's vehicle. Trooper Walton shined his spotlight in the vehicle and when the driver looked at him he pointed to the side for him to stop. Trooper Walton testified that the defendant swerved his car into the police vehicle causing a collision. He attempted to stop defendant again, and again defendant swerved into him forcing the

police car partially off the road at speeds of over 100 miles an hour. Trooper Walton was able to bring his car alongside defendant's vehicle for a third time, at which point Trooper Webb displayed a shotgun to defendant and indicated for him to pull over. Defendant was finally forced into the median. He crossed over the median and began fleeing in the opposite direction, but the police cars which had been bringing up the rear of the chase observed this attempt, and were able to cross over the median and successfully blockade defendant, bringing him and his vehicle to a halt. Defendant and the other two occupants of his vehicle were placed under arrest.

Defendant took the stand in his own behalf and testified that as he was proceeding along the highway from Grand Rapids to Detroit a young man in a Cadillac pulled up alongside of him and challenged him to a race. Defendant engaged in a race for a short time with this other person, but soon backed off the pace and proceeded at the legal speed limit. After a time, a state police vehicle pulled up alongside defendant and an officer rolled down the window, stuck a shotgun out, and demanded that defendant pull over. Defendant claims this was his first contact with the police on the date in question. It was his testimony that he panicked and decided to flee rather than stop his vehicle. He further testified that his vehicle never made physical contact with any of the pursuing police vehicles except for one instance when the police rammed him from behind. He testified that at no time did he attempt to run a police vehicle off the road, or attempt to cause his vehicle to come in contact with a police vehicle.

Defendant's first allegation of error is that the trial court should not have excused the prosecu-

tion's nonproduction, at trial, of the other two occupants of defendant's vehicle. Admittedly, these persons were res gestae witnesses. As such, the prosecution was duty-bound to produce them at trial. MCLA 767.40; MSA 28.980. If, however, the prosecution makes reasonable efforts to locate the res gestae witnesses, and exercises due diligence in attempting to locate and produce said witnesses, but is unable to do so, the nonproduction of the witnesses at trial will be excused. *People v King,* 32 Mich App 167; 188 NW2d 169 (1971), *People v Stephen,* 31 Mich App 604; 188 NW2d 105 (1971). *People v Robinson,* 390 Mich 629; 213 NW2d 106 (1973), held that defendants desiring new trials because of failure to produce res gestae witnesses should move for a new trial below before filing their brief on appeal. At such time, the prosecutor would explain the nonproduction. However, in this case, we believe such motion to be unnecessary, as it would serve no good purpose. During the trial of this case, and out of the presence of the jury, a hearing was held to determine whether the prosecution's efforts to produce the witnesses in question satisfied the standards of due diligence. It was testified that subpoenas were issued for the witnesses in question, but the witnesses could not be found at their last known address. The police were given two other addresses to check, which they did. The witnesses could not be found there. As the latter addresses were in Grand Rapids, the Grand Rapids police were asked if they had any knowledge of the whereabouts of the witnesses, but they could offer no help. The police were able to find out that the witnesses had talked about moving to California, but no one knew whether they had done so or not. No one had a California address for the witnesses. The trial court ruled that the state had made "as good an effort as possible under the

circumstances". The court also ruled that the prosecution had exercised due diligence in attempting to find and produce the witnesses. The question of due diligence is within the discretion of the trial judge, and will not be overturned unless a clear abuse is shown. *People v Davis,* 57 Mich App 505, 510; 226 NW2d 540, 542–543 (1975). We rule that, on these facts, there was no abuse of dicretion on the part of the trial judge. In fact, the evidence supports this decision.

Defendant's next allegation of error is that the trial judge failed to exercise his discretion in determining whether or not to allow the prosecution to question defendant concerning his past criminal record should defendant elect to take the stand. *People v Jackson,* 391 Mich 323; 217 NW2d 22 (1974), held that it was error for the trial judge to fail to recognize that he did have the discretion to preclude the prosecution from cross-examining a defendant concerning his past criminal record. *Jackson* is not applicable here, however, for it is clear from the record that the trial judge recognized that he did possess such discretion, and exercised it.

Defendant's next allegation of error is that he was not properly charged with felonious assault where the dangerous weapon alleged was an automobile. Assuming, without deciding, that this allegation of error has not been waived by defendant's failure to raise it below, we nevertheless find it to be without merit. *People v Goolsby,* 284 Mich 375; 279 NW 867 (1938), held that an automobile, adapted to accomplishing an assault and capable of inflicting serious injury is, when so employed, a "dangerous weapon" within the meaning of the statute which penalizes felonious assault. Defendant urges that *People v Smith,* 393 Mich 432; 225

NW2d 165 (1975), implicitly overrules *Goolsby*. We disagree. In *Smith,* the Supreme Court held that a long rifle was not the sort of dangerous weapon contemplated by a statute which mentioned only stabbing weapons and pistols. In the felonious assault statute, MCLA 750.82; MSA 28.277, the Legislature showed no preoccupation with either the size or the inherent dangerous properties of the weapons enumerated. Therefore, *Smith* is not applicable to these facts.

We have examined defendant's other allegations of error and found them to be without merit.

Affirmed.