PEOPLE v KAY

Docket No. 63615. Submitted October 14, 1982, at Escanaba.—Decided
      November 17, 1982.

Terry A. Kay was charged in the Delta Circuit Court with one
count of larceny in a building and two counts of assault with a
dangerous weapon. The alleged dangerous weapon was defen-
dant's German sherpherd dog which lunged at the face of one
of two grocery store employees, striking the employee's glasses.
The defendant had called the dog while he was being held by
the two store employees in connection with an alleged larceny
from the store. The trial court, Clair J. Hoehn, J., held that a
dog may be a dangerous weapon within the meaning of the
assault statute. The jury, thereafter, found defendant not guilty
of larceny in a building and guilty of assault with a dangerous
weapon as to the store employee whose glasses were struck.
The assault count relating to the other store employee was
dismissed by the prosecutor after the jury was unable to reach
a verdict on that count. Defendant appeals alleging error in the
holding that dog may be a dangerous weapon. *Held:*

1. A dog may be a dangerous weapon within the meaning of
the statute regarding assault with a deadly weapon.

2. The statute regarding assault with a deadly weapon does
not per se exclude animate objects from being found to be a
dangerous weapon. It is the manner in which the instrumental-
ity is used and the nature of the act which determines whether
the instrumentality is dangerous.

3. Defendant's failure to object to the jury instructions on
self-defense given by the court preclude appellate review absent
a miscarriage of justice. There was no miscarriage of justice.

Affirmed.

---

· REFERENCES FOR POINTS IN HEADNOTES

[1] 4 Am Jur 2d, Animals § 94 *et seq.*

6 Am Jur 2d, Assault and Battery §§ 53, 175.

79 Am Jur 2d, Weapons and Firearms §§ 1, 2.

Dog as deadly or dangerous weapon for purposes of statutes aggra-
vating offenses such as assault and robbery. 7 ALR4th 607.

[2] 6 Am Jur 2d, Assault and Battery § 53.

79 Am Jur 2d, Weapons and Firearms §§ 1, 2.

[3] 5 Am Jur 2d, Appeal and Error § 545 *et seq.*

1. CRIMINAL LAW — ASSAULT — DANGEROUS WEAPONS — DOGS.

   A criminal defendant's use of a dog may be regarded as the use of a dangerous weapon within the meaning of the statute regarding assault with a deadly weapon (MCL 750.82; MSA 28.277).

2. CRIMINAL LAW — ASSAULT — DANGEROUS WEAPONS — INSTRUMEN-TALITIES — MANNER OF USE — NATURE OF ACT — ANIMATE OBJECTS.

   The manner in which an instrumentality is used and the nature of the act determine whether the instrument is a dangerous weapon within the meaning of the statute regarding assault with a deadly weapon; the fact that the instrumentality is either animate or inanimate is not controlling for such determination (MCL 750.82; MSA 28.277).

3. APPEAL — JURY INSTRUCTIONS — PRESERVING OBJECTIONS.

   The failure to object to a trial court's jury instructions precludes appellate review of such instructions unless a miscarriage of justice would occur.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Steven L. Pence,* Prosecuting Attorney, and *Mary C. Smith,* Assistant Attorney General, for the people.

*Davis, Olsen & Filoramo* (by *John R. Filoramo),* for defendant on appeal.

Before: D. F. WALSH, P.J., and ALLEN and M. F. CAVANAGH, JJ.

ALLEN, J. We are asked to decide the question of first impression of whether a dog may be a dangerous weapon within the meaning of MCL 750.82; MSA 28.277. Relying on *Commonwealth v Tarrant,* 2 Mass App 483; 314 NE2d 448 (1974), the trial court answered that question in the affirmative and on February 22, 1982, defendant was found guilty by a jury of one count of assault with a dangerous weapon. Sentenced April 1, 1982, to a term of three years probation, with the first six

months to be spent in the Delta County jail, defendant appeals as of right.

On October 30, 1981, defendant stopped at Elmer's Super Value grocery store in Escanaba. Store employees suspected defendant of placing one or two steaks under his jacket. Defendant left the store without going through the cash register and upon reaching the front entrance began to run toward the parking lot where his van was parked. Inside the van was defendant's German shepherd dog. Two store employees followed defendant to the parking lot where they accused defendant of committing larceny. When defendant denied taking any merchandise, the two employees grabbed defendant. Defendant then opened the van door and either called his dog by name or said "get 'em". The dog lunged at the face of store employee Randy Berhow, striking his glasses. Berhow and the second employee, Terry Denessen, released their grip on defendant who grabbed the dog putting him back in the van. Defendant then got in the van and drove off.

Defendant was charged with one count of larceny in a building, and two counts of assault with a dangerous weapon. February 22, 1982, the jury found defendant not guilty of larceny in a building, but guilty of assault with a dangerous weapon as to store employee Randy Berhow. As to Count III relating to assault with a dangerous weapon against employee Terry Denessen, the jury was unable to reach a verdict, and the count was dismissed by the prosecutor.

The statute in question reads:

"Any person who shall assault another with a gun, revolver, pistol, knife, iron bar, club, brass knuckles *or other dangerous weapon,* but without intending to com-

mit the crime of murder, and without intending to inflict great bodily harm less than the crime of murder, shall be guilty of a felony." MCL 750.82; MSA 28.277. (Emphasis added.)

Defendant argues that because only inanimate objects have been found to be dangerous weapons in Michigan, a dog cannot be held to be a dangerous weapon under the Michigan statute.[1] Although no Michigan case has spoken to the issue, a few other jurisdictions have addressed the question of whether a criminal defendant's use of a dog may be regarded as use of a dangerous weapon, as that term is defined in the various state statutes involved. The relevant decisions are summarized in Anno: *Dog as Deadly or Dangerous Weapon for Purposes of Statutes Aggravating Offenses Such as Assault and Robbery,* 7 ALR4th 607, 609, as follows:

"Although there are few reported cases involving the use of dogs as dangerous weapons, and the relevant statutes differ widely among the jurisdictions, some general observations are possible. Since many state legislatures have not resolved the question whether a criminal defendant's use of a dog to intimidate his assault or robbery victim constitutes use of an offensive, dangerous, or deadly weapon, resolution of the issue has depended upon judicial construction of the more generally phrased statutes applicable. Where the relevant statute defining dangerous or offensive weapon *broadly includes any instrumentality so constructed or used as to be likely to produce death or serious bodily harm,* courts have extended the characterization offensive or

[1] A boot, *People v Buford,* 69 Mich App 27; 244 NW2d 351 (1976), an automobile, *People v Blacksmith,* 66 Mich App 216; 238 NW2d 810 (1975), a chair, *People v Sanders,* 58 Mich App 512; 228 NW2d 439 (1975), a broomstick, *People v Knapp,* 34 Mich App 325; 191 NW2d 155 (1971), a beer bottle, *People v Kildow,* 19 Mich App 194; 172 NW2d 492 (1969), and a flashlight, *People v Ragland,* 14 Mich App 425; 165 NW2d 639 (1968).

dangerous weapon to include dogs used to attack or intimidate the victim." (Emphasis added.)

In *Tarrant, supra,* the Massachusetts court held that a dog could be a "dangerous weapon" for purposes of the armed robbery statute. However, as pointed out by defendant, the court's conclusion was reinforced by the fact that the proposed Criminal Code of Massachusetts defined a dangerous weapon as including both animate and inanimate objects. Michigan's proposed Revised Criminal Code does not include animate objects in the definition of "dangerous instrument".[2]

In *State in the Interest of J R,* 165 NJ Super 346; 398 A2d 150 (1979), the New Jersey court affirmed defendant's conviction for "assault with an offensive weapon (his dog)". The dog, a German shepherd, responded to defendant's command "sic 'er" by growling and stalking the victim. The statute claimed to have been violated, like the Michigan statute in the instant case, referred only to inanimate objects. It read:

"Any person who willfully or maliciously assaults another with an offensive weapon or instrument * * * is guilty of a high misdemeanor."

Finally, in *People v Torrez,* 86 Misc 2d 369; 382 NYS2d 233 (1976), defendant sought a dismissal of an indictment charging him with use of a dangerous instrument, a German shepherd dog. The New York statute defined dangerous instrument in inanimate terms:

---

[2] " 'Dangerous instrument' means any instrument, article, or substance that under the circumstances in which it is used, attempted to be used, or threatened to be used is readily capable of causing death or serious physical injury, and includes a 'vehicle' as that term is defined in subparagraph (m)." (Cited from CJI, p 17-57 Supp 6/80.)

"13. 'Dangerous instrument' means any instrument, article or substance, including a 'vehicle' as that term is defined in this section, which, under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or other serious physical injury."

The court held that the statutory definition of dangerous instrument, which broadly included any article or instrument which could cause serious injury, did not exclude large dogs trained to attack.

In view of the authorities cited from other jurisdictions and the fact that the Michigan statute, like the statutes cited in the New Jersey and New York decisions, broadly defines "dangerous weapon" to include any object which, when used, may be considered dangerous, we hold that a dog may be a dangerous weapon within the meaning of MCL 750.82; MSA 28.277. We reject defendant's claim that MCL 750.82; MSA 28.277 per se excludes animate objects. In *People v Goolsby,* 284 Mich 375; 279 NW 867 (1938), our Supreme Court held that an automobile may be a dangerous weapon. In that case, defendant had driven his car so as to knock down a police officer on traffic duty in Flint and run over the officer's foot. The Court explained:

"Some weapons carry their dangeorus character because so designed and are, when employed, *per se,* deadly, while other instrumentalities are not dangerous weapons unless turned to such purpose. The test as to the latter is whether the instrumentality was used as a weapon and, when so employed in an assault, dangerous. The character of a dangerous weapon attaches by adoption when the instrumentality is applied to use against another in furtherance of an assault. When the purpose is evidenced by act, and the instrumentality is

adapted to accomplishment of the assault and capable of inflicting serious injury, then it is, when so employed, a dangerous weapon." *Goolsby,* p 378.

If an automobile driven on the streets of Flint may constitute a dangerous weapon, we see no reason why a horse ridden under similar circumstances on Mackinac Island or any other place in Michigan may not be a dangerous weapon. The fact that one is inanimate and the other animate is not controlling. It is the manner in which the instrumentality is used and the nature of the act which determines whether the instrumentality is dangerous.

Defendant also contends that the instructions given by the court on self-defense were improper. However, no objection was taken. Failure to object precludes appellate review unless a miscarriage of justice would occur. *People v McMaster,* 105 Mich App 162; 306 NW2d 434 (1981). We do not find a miscarriage of justice.

Affirmed.