STATE of Wisconsin, Plaintiff-Respondent,

v.

Richard M. SINKS, Defendant-Appellant.†

Court of Appeals

*No. 91-2550-CR. Submitted on briefs March 9, 1992.—Decided March 24, 1992.*

(Also reported in 483 N.W.2d 286.)

†Petition to review denied.

247

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Charles Bennett Vetzner,* assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Sharon Ruhly,* assistant attorney general.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J. Richard Sinks appeals a judgment of conviction and part of an order denying postconviction relief. He argues that (1) the evidence was insufficient to convict him of first-degree sexual assault because a dog is not a dangerous weapon under sec. 940.255(1)(b), Stats.; (2) he was entitled to resentencing after one of his three first-degree sexual assault convictions was dismissed as multiplicitous; and (3) the sentencing judge's failure to recuse himself was an error that deprived Sinks of a fair sentencing. We reject these arguments and affirm the judgment and order.

On October 20, 1989, Sinks pulled his van over and offered M.S. a ride when he saw her walking along the road because her car ran out of gas. Sinks took M.S. to his home, and he told her that he had a gas can and that she could use his phone. M.S. testified that Sinks also told her that he had a doberman pinscher and that the dog once prevented a burglar from getting away after breaking into his home. According to M.S., once in his home, Sinks held a knife to her throat and instructed his doberman to "guard." M.S. testified that she believed the dog would kill her if she tried to leave and that she was afraid of it. Sinks then proceeded to (1) touch M.S.'s

vaginal area, breasts and buttocks with his hands; (2) commit the act of fellatio with her; and (3) have vaginal intercourse with her. M.S. testified that at the time of the sexual assaults, the knife was on an end table next to the bed and within Sinks' reach, and the dog remained in the bedroom.

Sinks was charged with one count of kidnapping, contrary to sec. 940.31(1)(c), Stats.,[1] and three counts of first-degree sexual assault, contrary to sec. 940.225(1)(b). Section 940.225(1) provides in pertinent part:

> FIRST DEGREE SEXUAL ASSAULT. Whoever does any of the following is guilty of a Class B felony:
>
> . . ..
>
> (b) Has sexual contact or sexual intercourse with another person without consent of that person by use or threat of use of a dangerous weapon or any article used or fashioned in a manner to lead the victim reasonably to believe it to be a dangerous weapon.

Count one of the criminal complaint was the kidnapping charge, count two was for sexual contact (Sinks' touching M.S.'s vaginal area, breasts and buttocks), count three was for sexual intercourse (fellatio) and count four was for a separate act of sexual intercourse (vaginal intercourse).

The jury found Sinks guilty of all four counts. At the conclusion of the trial and again before sentencing, Sinks moved the sentencing judge, the Honorable William Donovan, to postpone sentencing, set for March 19,

---

[1]Section 940.31(1) provides in part:

Whoever does any of the following is guilty of a Class B felony:

. . ..

(c) By deceit induces another to go from one place to another with intent to cause him to be secretly confined or imprisoned or to be carried out of this state or to be held to service against his will.

1990, until after April 3, 1990, the date of the election in which the judge was running for re-election against the Marinette County district attorney. The basis of Sinks' motion was that an issue in the election campaign waged against the judge was "firmness" relating to criminal sentences, and Sinks' case was a "high visibility case." Sinks alleged that the judge would give him a "firm" sentence to better the judge's position in the election campaign, and the sentence would not be based upon the evidence and other legitimate factors.

The judge denied Sinks' motion, and sentencing was held on March 19, 1990. At sentencing, Sinks again requested that the sentencing be postponed. The judge responded that he was fit to carry out his judicial duties before the election and to sentence Sinks, and that he would give defense counsel two minutes to address the motion. After counsel's arguments, the judge indicated that he regarded the motion as a "publicity stunt," and that he hoped counsel was not collaborating with the district attorney, the judge's opponent in the upcoming election. The judge also referred to defense counsel's "ridiculous ads." After that statement, counsel, who was also running for a different judgeship, defended his advertisements. The judge again denied Sinks' motion and proceeded with sentencing.

The judge sentenced Sinks to fifteen years on each of the four counts. The maximum on each of the counts was twenty years. *See* sec. 939.50(3)(b), Stats. Counts one and two were to run concurrently with each other, counts three and four were to run concurrently with each other and consecutive to counts one and two. The end result was thirty years' imprisonment.

After sentencing, Sinks filed a motion for postconviction relief. Because Judge Donovan was defeated in his reelection bid, Reserve Judge John Jaekels heard and

decided the motion. Sinks alleged that (1) counts two and four, involving the sexual contact and the vaginal intercourse, were multiplicitous because they were part of a single transaction; (2) his rights to due process, an unbiased judge and effective assistance of counsel were violated because of Judge Donovan's personal animus toward Sinks and because of the discussion between defense counsel and Judge Donovan at sentencing; and (3) Judge Donovan's reasons for Sinks' sentence were inadequate. Sinks requested Judge Jaekels to dismiss count two or four, vacate the judgment of conviction and order resentencing.

Judge Jaekels held that counts two and four were multiplicitous because the sexual contact and the vaginal intercourse constituted a continuous episode. Therefore, he dismissed count two but he did not order resentencing. Judge Jaekels denied Sinks' other claims. Sinks appeals, on grounds of insufficiency of the evidence, specifically that part of the judgment of conviction relating to the remaining two counts of first-degree sexual assault. He also appeals that part of the order denying his postconviction motion relating to Judge Donovan's alleged bias and Judge Jaekels' failure to order resentencing after dismissing count two.

## SUFFICIENCY OF THE EVIDENCE

We first address Sinks' claim that the evidence was insufficient to convict him of first-degree sexual assault under sec. 940.225(1)(b), Stats., because a dog is not a dangerous weapon. The state contends that the prosecutor did not argue to the jury that the dog was a dangerous weapon. Sinks suggests that because the judge and prosecutor considered the knife and the dog to be dangerous weapons, the jury analyzed the evidence in the

251

same fashion. Because the arguments of counsel are not part of the record and it is disputed whether the prosecutor argued that the dog was a dangerous weapon, we assume, for purposes of this appeal, that the prosecution argued that both the knife and the dog constituted dangerous weapons under sec. 940.225(1)(b). Although the parties do not raise the issue of unanimity, because it is undisputed that the knife that Sinks used to threaten M.S. was a dangerous weapon and we conclude, for the reasons that follow, that the manner in which Sinks used his dog constituted use or threat of use of a dangerous weapon, this case does not present a unanimity problem. *See State v. Hecht,* 116 Wis. 2d 605, 619, 342 N.W.2d 721, 729 (1984).

In reviewing the sufficiency of the evidence to support a conviction, we will not reverse the conviction unless the evidence, viewed most favorably to the state and the conviction, is so insufficient in force and probative value that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt. *State v. Poellinger,* 153 Wis. 2d 493, 501, 451 N.W.2d 752, 755 (1990). The state had the burden of proving at trial that: Sinks had sexual contact or sexual intercourse with M.S., she did not consent to the contact or intercourse and Sinks had sexual contact or intercourse with her by the use or threat of use of a dangerous weapon. *See* Wis J I—Criminal 1202 (1990); sec. 940.225(1)(b), Stats. Section 939.22(10), Stats., defines "dangerous weapon" as any (1) firearm; (2) device designed as a weapon and capable of producing death or great bodily harm; (3) electric weapon; or (4) other device or instrumentality which, in the manner it is used or intended to be used, is calculated or likely to produce death or great bodily harm. The state chose and the jury was instructed on the

252

fourth definition. Thus, the issue we must decide is whether a dog is an instrumentality that, in the manner it is used or intended to be used, is calculated or likely to produce death or great bodily harm.

This issue also involves the application of secs. 940.225(1)(b) and 939.22(10), Stats. The construction and application of a statute is a question of law that we review de novo. *Gonzalez v. Teskey,* 160 Wis. 2d 1, 7-8, 465 N.W.2d 525, 528 (Ct. App. 1990). When interpreting a statute, we first look to the statutory language, and, if the statute's meaning is clear, we will not look outside the statute. *McMullen v. LIRC,* 148 Wis. 2d 270, 274, 434 N.W.2d 830, 832 (Ct. App. 1988).

Sinks argues that a dog cannot be an instrumentality because instrumentality refers only to an inanimate object. However, the common and ordinary definition of instrumentality contains no such limitation. Instrumentality is defined as "something by which an end is achieved." *Webster's Third New Int'l Dictionary* 1172 (Unabr. 1976). Additionally, the statute does not limit or confine the definition of "dangerous weapon" to only inanimate objects. Therefore, based on the plain language of the statute, we conclude that the definition of "dangerous weapon" in sec. 939.22(10), Stats., as applicable to sec. 940.225(1)(b), Stats., is sufficiently broad to include animate, as well as inanimate, objects.

Decisions in other jurisdictions support our conclusion. In *Commonwealth v. Tarrant,* 314 N.E.2d 448, 450-51 (Mass. App. Ct. 1974), *aff'd,* 326 N.E.2d 710 (1975), a court concluded that a dog can be a dangerous weapon. The court recognized the definition of dangerous weapon as "any . . . instrumentality so constructed or so used as to be likely to produce death or great bodily

harm." *Id.* at 450. This definition is similar to the definition at issue in our case. The court held that "[t]here can be little doubt that a dog . . . used for the purpose of intimidation or attack falls within this definition." *Id.* at 451. The court based its decision on the common knowledge that dogs can inflict severe injuries and they can be instructed to attack persons on command. *Id.*

Similarly, in *People v. Kay,* 328 N.W.2d 424, 425–26 (Mich. Ct. App. 1982), the court recognized that where the statute defining "dangerous weapon" broadly included any instrumentality so used as to be likely to produce death or serious bodily harm, dogs used to attack or intimidate a victim could be considered dangerous weapons. Kay, like Sinks, argued that a dog could not be a dangerous weapon because only inanimate objects could be dangerous weapons. *Id.* at 425. The court held that the fact that one instrumentality is inanimate and the other is animate is not controlling but, rather, it is the manner in which the instrumentality is used and the nature of the act that determines whether the instrumentality is a dangerous weapon. *Id.* at 426.

Because we conclude that a dog can be a dangerous weapon, we next determine whether the evidence was sufficient to prove that Sinks used or intended to use this particular dog in a manner likely to produce death or great bodily harm. M.S. testified that when they pulled up outside Sinks' home, Sinks was telling her about his doberman and an incident where a burglar had broken into his house and his dog would not allow the burglar to get away. M.S. also testified that Sinks instructed his doberman to "guard," and that the dog was present during the assaults. It is common knowledge that dogs can inflict severe injury and can be instructed to attack. Even Sinks recognized the dangerous propen-

254

sity of his dog when he built a dog pen because of complaints that his dog was vicious. We conclude that the evidence was sufficient for a reasonable jury to believe that Sinks used or threatened the use of his dog in such a manner that the dog constituted a dangerous weapon and was likely to produce, at the very least, great bodily harm to M.S. if she tried to escape during the sexual assaults.

## RESENTENCING

Next, Sinks argues that he was entitled to resentencing after one of his three first-degree sexual assault convictions was dismissed as multiplicitous. Whether a trial court has the authority to resentence a defendant after one of the defendant's convictions is dismissed as multiplicitous is a question of law that we review de novo. *See State v. Martin,* 121 Wis. 2d 670, 672–73, 360 N.W.2d 43, 45 (1985).

In *Martin,* the supreme court held that when a defendant is convicted of and sentenced for multiple offenses and one conviction and sentence is vacated because it was held to be multiplicitous, the validity of all sentences is implicated and resentencing on the remaining convictions is *permissible. Id.* at 681, 360 N.W.2d at 49. Consequently, the trial court has the inherent power to resentence, but it need not exercise that power. Thus, we conclude that resentencing is within the trial court's discretion.

A trial court reasonably exercised its discretion where it examined the relevant facts, applied a proper standard of law, and, using a rational process, reached a conclusion that a reasonable judge could reach. *Loy v. Bunderson,* 107 Wis. 2d 400, 414–15, 320 N.W.2d 175,

184 (1982). If the record shows that the trial court exercised its discretion and that there is a reasonable basis for the trial court's decision, we will uphold the decision. *Hedtcke v. Sentry Ins. Co.,* 109 Wis. 2d 461, 471, 326 N.W.2d 727, 732 (1982).

Judge Jaekels dismissed count two of the conviction because it was multiplicitous with respect to count four, but he did not order a resentencing. Sinks argues that he is entitled to a new sentencing, on the remaining three convictions, that is "untainted" by an invalid conviction. The facts indicate that the fifteen-year sentence on count two was to run concurrent with the fifteen-year sentence on count one. Thus, dismissing count two did not change Sinks' actual term of imprisonment.

Additionally, in sentencing, the law requires a judge to consider the gravity of the offense, the protection of the public and the rehabilitative needs of the defendant. *State v. Macemon,* 113 Wis. 2d 662, 667–68, 335 N.W.2d 402, 405–06 (1983). Judge Jaekels recognized the heinousness of Sinks' offenses and indicated that a reasonable judge could hardly consider anything less than the maximum sentence for purposes of punishment and rehabilitation. He therefore declined to resentence Sinks. Based on the facts of record and applicable law, we conclude that Judge Jaekels acted reasonably by refusing to order a new sentencing and by enforcing Sinks' original sentence.

### FAIR SENTENCING

Sinks also contends that Judge Donovan's failure to recuse himself was an error that deprived Sinks of a fair sentencing. Sinks argues that when the judge refused to postpone Sinks' sentencing until after the election, the

judge revealed a preoccupation with political considerations and a bias against defense counsel that resulted in a severe sanction against Sinks.

The issue is not whether Judge Donovan erred by failing to recuse himself because Sinks does not argue that the judge should have recused himself under sec. 757.19(2), Stats.,[2] dealing with the sua sponte disqualification of a judge, and it is undisputed that Sinks never requested recusal. Rather, the issue we address is whether Sinks was denied his due process right to a fair sentencing. Whether a judge's partiality, if any, violated a defendant's due process rights is a question of law that we review de novo. *State v. Hollingsworth,* 160 Wis. 2d 883, 893, 467 N.W.2d 555, 559 (Ct. App. 1991).

A defendant is denied due process only if the judge, in fact, treats him unfairly. *Id.* at 894, 467 N.W.2d at 560. A defendant is not deprived of the fundamental fairness guaranteed by the constitution either by the appearance of a judge's partiality or by circumstances that may lead one to speculate as to the judge's partiality. *Id.* Additionally, a judge's bias against defense counsel must be sufficiently severe in order to translate into partiality against the defendant; antagonism or a strained relationship between counsel and the judge is insufficient. *Id.; State v. Walberg,* 109 Wis. 2d 96, 107, 325 N.W.2d 687, 693 (1982).

---

[2]Section 757.19(2) provides in part:

Any judge shall disqualify himself or herself from any civil or criminal action or proceeding when one of the following situations occurs:

. . ..

(g) When a judge determines that, for any reason, he or she cannot, or it appears he or she cannot, act in an impartial manner.

Sinks argues that the discussion between his counsel and Judge Donovan gave the appearance of partiality. Although Judge Donovan could have selected better terminology and could have been more diplomatic when denying Sinks' motions for postponing sentencing, even if the discussion between the judge and defense counsel gave an appearance of partiality or was in fact partial against defense counsel, we conclude that it was not so severe as to translate into actual or apparent bias against Sinks. *See Hollingsworth,* 160 Wis. 2d at 894, 467 N.W.2d at 560. Consequently, we reject Sinks' argument that he was denied his due process right to a fair sentencing.

*By the Court.*—Judgment and order affirmed.