74 F.3d 1242
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Donald K. BOMAN, Defendant-Appellant.
 No. 95-2066.
 United States Court of Appeals, Seventh Circuit.
 Argued Nov. 15, 1995.
Decided Jan. 18, 1996.
 
 Before ESCHBACH, MANION and DIANE P. WOOD, Circuit Judges.
 
 ORDER
 
 1
 Donald Boman, a federal prisoner, pleaded guilty to aggravated assault for attacking another inmate with a heavy metal object. The district court determined that the object was a dangerous weapon, and enhanced Boman's sentence accordingly. Boman appeals that enhancement, arguing that the object was not a dangerous weapon, and that even if it were, in an assault case it is impermissible to enhance the sentence for use of a dangerous weapon where the court raised the base offense from minor assault to aggravated assault due to the defendant's use of the weapon. Because the district court correctly applied the federal Sentencing Guidelines, we affirm.
 
 Facts
 
 2
 On October 19, 1994, Boman--then an inmate at the Federal Correctional Institute at Oxford, Wisconsin--attacked another inmate, Humberto Martin, while both were in the prison weight lifting area. Boman struck Martin with a barbell collar. The collar is a steel cylinder one and one half inches long, and two and one half inches in diameter. The collar has a wall thickness of one quarter inch. It weighs seventeen ounces. A three inch screw extends from the top of the collar. The collar slides onto a barbell; by tightening the screw, the collar locks in place, holding the weight plates fixed on the barbell.
 
 
 3
 The record does not indicate precisely how Boman used the collar to strike Martin. Based on his attorney's questions to the investigating FBI agent at Boman's sentencing hearing, it appears that Boman used the collar as a crude brass knuckle. Alternatively, Boman may have held the collar by the screw and used it as a bludgeon. In any event, Martin suffered a broken nose, multiple abrasions and contusions to his face and shoulder, and a cracked tooth.
 
 
 4
 Boman was charged with and pleaded guilty to assault under 18 U.S.C. Sec. 113(f).[1] The Presentence Investigation Report ("PSR") recommended a base offense of aggravated assault under Sec. 2A2.2(a) of the Sentencing Guidelines. Aggravated assault carries a base offense level of 15. The PSR also recommended a 4 level enhancement under Sec. 2A2.2(b) for Boman's use of the collar as a dangerous weapon, as defined in Sec. 1B1.1, comment. (n. 1(d)). The PSR found that Boman caused Martin only "bodily injury" rather than "serious bodily injury," and therefore recommended an additional 2 point enhancement. With a 3 point reduction for acceptance of responsibility and a criminal history category of IV, the court sentenced Boman to 51 months for the assault out of a possible range of 41-51 months.
 
 
 5
 On appeal, Boman raises two issues related to the 4 point enhancement for use of a dangerous weapon. First, he argues that the trial court committed clear error when it ruled that the collar was a dangerous weapon. Second, he argues that even if the collar were a dangerous weapon, the court impermissibly counted his use of the collar twice--first to raise the base offense from minor assault to aggravated assault, and then again to enhance the penalty under aggravated assault for use of a dangerous weapon.
 
 
 6
 I. The District Court Did Not Commit Clear Error in Finding that the Defendant Used a Dangerous Weapon
 
 
 7
 Boman's first claim on appeal is that the district court erroneously concluded that the metal collar with which he struck Martin was a dangerous weapon. According to the Sentencing Guidelines, a dangerous weapon is "an instrument capable of inflicting death or serious bodily injury." U.S.S.G. Sec. 1B1.1, comment. (n. 1(d)). Whether the collar is a dangerous weapon is a factual determination. We review the district court's "factual determinations underlying the application of the guidelines" for clear error. United States v. Ritsema, 31 F.3d 559, 564 (7th Cir.1994) (citation omitted).
 
 
 8
 Boman's argument hinges on the distinction between inherently dangerous weapons--guns, for example--and objects that are not inherently dangerous but may be used as a weapon, such as a car or a chair. In the latter case, a defendant's sentence cannot be increased for use of a dangerous weapon merely because he has a car or a chair with him at the time of his offense--at that point, the car or chair is not a weapon. United States v. Dayea, 32 F.3d 1377, 1380 (9th Cir.1994). Rather, his sentence can be increased only when he threatens or attempts to use the car as a weapon to run over someone, see United States v. Woody, 55 F.3d 1257, 1274-75 (7th Cir.), cert. denied, 116 S.Ct. 234 (1995); Dayea, 32 F.3d at 1380, or he threatens or intends to use the chair as a weapon to bludgeon someone. See United States v. Williams, 954 F.2d 204, 205-06 (4th Cir.1992).
 
 
 9
 Courts have had little trouble applying this analysis--they ask, first, whether the defendant used the object as a weapon, and second, whether the object, when used as a weapon, is capable of inflicting death or serious bodily injury. The second part of this analysis is purely objective--courts look only to whether the weapon is capable of inflicting serious bodily injury, and not to whether the defendant actually inflicted such harm. See, for example, United States v. Boyd, 924 F.2d 945, 947-48 (9th Cir.), cert. denied, 502 U.S. 828 (1991) (holding that a road flare brandished as if it were dynamite is a dangerous weapon because it can be used to inflict serious bodily injury or could attract deadly force in response, even though the defendant did not actually light the flare); United States v. Harris, 44 F.3d 1206, 1216 (3rd Cir.), cert. denied, 115 S.Ct. 1806 (1995) (holding that a particular brand of mace was not a dangerous weapon where there was no evidence to support the government's claim that the mace could cause death or serious bodily injury).
 
 
 10
 Boman, however, is asking this court to make a far more subtle distinction as to the manner in which he used the weight collar. According to Boman, this court should inquire into whether the collar was capable of causing death or serious bodily injury in the precise manner in which he used it. Boman's proposed test is purely subjective. To apply it, courts would be required to determine exactly how the defendant used the object as a weapon, and whether that particular use could have caused death or serious bodily injury. But just because Bowman's use of the weapon inflicted harm that he considers less than serious does not get him off the hook.
 
 
 11
 There is no doubt that Boman used the collar to strike Martin and that he caused significant--albeit not "serious"--injury to Martin. Thus, Boman cannot deny that he used the collar as a weapon. What Boman argues, however, is that although he did use the collar as a weapon, he did not use it as a dangerous weapon.
 
 
 12
 There are several problems with Boman's argument. First, the Guidelines refer to a dangerous weapon as "an instrument capable of inflicting" serious injury; the focus is on the instrument and its capabilities, and not the particular manner of use or the end result. Moreover, the Guidelines treat objects that appear to be dangerous weapons--a toy gun, for example--as such. When determining whether an object is dangerous, the Guidelines thus clearly look only to the actual or apparent ability to do harm, and not to the actual harm done. Boman's theory would redirect the determination of dangerousness toward the actual manner of use and the damage resulting from that use.
 
 
 13
 Second, Boman's argument would create a significant anomaly in the Guidelines. Because the Guidelines increase sentences for brandishing or threatening to use a dangerous weapon, had Boman merely brandished the collar and threatened to beat Martin, he could have had his sentence increased because, as he concedes, the collar can be used as a dangerous weapon. Under Boman's theory, however, once he actually used the collar to injure Martin in a "non-serious" way, the collar ceased to be a dangerous weapon, and hence his sentence could not be increased. Thus, Boman would be punished less for actually striking Martin with the collar than for merely threatening to strike him.
 
 
 14
 Finally, there seems to be no way for trial courts to make the fine distinctions Boman's interpretation of the Guidelines would require. There is no question that Boman beat Martin about the head and neck with a heavy metal object. Apparently, Martin was fortunate to escape without more injury. The only way to conduct Bowman's test would be to look at the injury actually caused. But the Guidelines clearly reject this inquiry by focusing only upon the extent of injury the weapon is capable of causing.
 
 
 15
 The question before us is whether the district court committed clear error when it determined that the collar, used as either a brass knuckle or a bludgeon, is capable of inflicting serious injury. Approximately 30 states explicitly define brass knuckles and bludgeons as deadly or dangerous weapons per se. Although the exact state definitions of deadly or dangerous weapon may vary from the definition in the Sentencing Guidelines, the fact remains that a majority of states regard brass knuckles and bludgeons as weapons capable of inflicting significant bodily harm. The collar was included as part of the record on appeal and the members of this court examined it carefully. Because Boman does not deny that he used the collar as a weapon, nor does he deny (nor can he) that the collar is capable, under some circumstances, of causing death or serious injury, it was not clear error for the district court to find that the collar was a dangerous weapon.
 
 
 16
 II. The District Court Correctly Considered Boman's Use of the Collar Both to Convict Him of Aggravated Assault and to Enhance His Sentence
 
 
 17
 Boman's second argument on appeal is that the district court incorrectly considered his use of the collar both as an element of the offense of aggravated assault and to enhance his sentence. According to Boman, this is the type of impermissible "double counting [that] occurs when identical conduct is described in two different ways so that two different [sentencing] adjustments apply." United States v. Haines, 32 F.3d 290, 293 (7th Cir.1994); see also United States v. Johnson, 46 F.3d 636, 639 (7th Cir.1995) (same).
 
 
 18
 This court decided precisely this issue in United States v. Sorenson, 58 F.3d 1154 (7th Cir.1995). In Sorenson, we held that a court may enhance a sentence for use of a dangerous weapon, notwithstanding the fact that the weapon also elevated the base offense from minor assault to aggravated assault. Sorenson held that a defendant is guilty of aggravated assault so long as he possessed a dangerous weapon and the offense "involved" a dangerous weapon. Id. at 1161. A defendant could therefore be guilty of assault with a dangerous weapon without actually using the weapon, such as in a case where the defendant threatened to use the weapon. It is only when the assailant actually uses the weapon that he qualifies for the four point enhancement under Sec. 2A2.2(b). Id. Because the enhancement applies only when the assailant commits the additional act of using the weapon, there is no impermissible double counting.
 
 
 19
 Boman argues that Sorenson does not overrule Haines or Johnson. This is true--even after Sorenson, a sentencing court may not characterize the same conduct two different ways and thereby apply two different sentencing adjustments. But Sorenson did hold that a court could apply the four point enhancement for use of a dangerous weapon to a base offense of aggravated assault because the enhancement imposes an additional penalty for criminal acts not covered by the base offense. This is precisely the purpose of a sentencing enhancement; as this court said in United States v. Lallemand, 989 F.2d 936, 939 (7th Cir.1993), "[t]he purpose of an upward adjustment [in sentencing] is to take account of an aggravating factor not already taken into account in the base offense guideline."
 
 
 20
 Boman gives no reason why Sorenson does not apply to his case or why this court should depart from or reconsider Sorenson. Thus, we reject this argument as well.
 
 Conclusion
 
 21
 The district court did not commit clear error when it treated the barbell collar as a dangerous weapon, nor did it impermissibly double count the collar when determining Boman's sentence. Accordingly, the district court's sentence is AFFIRMED.
 
 
 
 [1]
 On September 13, 1994, one month before the offense at issue here, Congress amended 18 U.S.C. Sec. 113. The grand jury charged Boman under the pre-amendment version. For the purposes of this case, the amendment made no substantive changes in the law