STATE OF NORTH CAROLINA v. JAMES ALLEN COOK

No. COA03-396

(Filed 4 May 2004)

**1. Assault— assault with deadly weapon on governmental official—use of dog—sufficiency of evidence**

The trial court did not err by denying defendant's motions to dismiss the charges of assault with a deadly weapon on a governmental official at the close of the State's evidence and at the close of all evidence even though defendant contends there was insufficient evidence to prove the deadly weapon element based on the use of a dog, because: (1) the dog in this case could be considered a deadly weapon not only if it was deadly by its nature, but also if it was used by defendant in a deadly manner or if the police officers perceived the dog to be deadly in its use; and (2) there was sufficient evidence from which the jury could find that defendant used the dog as a deadly weapon.

**2. Appeal and Error— preservation of issues—failure to object—failure to argue plain error**

Although defendant contends the trial court erred in a prosecution for assault with a deadly weapon (a dog) on a governmental official by instructing the jury that the pertinent dog was under defendant's control, this assignment of error is dismissed because: (1) no objection was made at trial; and (2) defendant failed to argue plain error.

Judge ELMORE dissenting.

Appeal by defendant from judgment entered 16 December 2002 by Judge John O. Craig, III in Guilford County Superior Court. Heard in the Court of Appeals 29 January 2004.

*Attorney General Roy Cooper, by Assistant Attorney General John P. Barkley, for the State.*

*Lynne Rupp for the defendant.*

TIMMONS-GOODSON, Judge.

James Allen Cook ("defendant") appeals his convictions of felony possession of a controlled substance, two counts of assault with a deadly weapon on a governmental official, and habitual felon. For the reasons stated herein, we hold that defendant received a trial free of prejudicial error.

The State's evidence presented at trial tends to show the following: On 21 July 2002, Greensboro police officers Russell Linstad ("Officer Linstad") and Clint Queen ("Officer Queen") stopped defendant for minor traffic offenses. When Officer Linstad approached the car and asked defendant to produce his driver's license and automobile registration, defendant was standing outside the car holding a bag of groceries. In response to defendant repeatedly reaching in his left pocket, Officer Linstad directed defendant to cease placing his hand in his pocket and attempted to frisk defendant for a weapon. Defendant attempted to strike Officer Linstad with his fists. Officer Linstad then informed defendant that he was under arrest for failing to comply with his request to produce a license and registration and for resisting a frisk search.

Officers Linstad and Queen attempted to restrain defendant, but he wrested away and ran into the back yard of his sister's home where there was a medium-sized dog on a chain. Defendant placed himself between the dog and the police officers pursuing him into the back yard. Officer Linstad reached the back yard first. Defendant pushed the dog toward Officer Linstad, called the dog by name and said "bite him." The dog moved toward Officer Linstad who was running toward defendant at full speed. Officer Linstad jumped over the dog to avoid being bitten by the dog. Officer Linstad tackled defendant and the dog bit Officer Linstad on the right ankle. Officer Queen approached and struck the dog in an effort to get the dog to release Officer Linstad. At that time, the officers were able to handcuff defendant. The dog then bit Officer Queen in the shin and in response Officer Queen shot the dog with his service revolver.

After defendant was restrained, Officer Linstad searched defendant's left pocket and found a dollar bill wrapped around an off-white

rock substance which was later identified by the State Bureau of Investigation as crack cocaine. Defendant was arrested and later indicted on charges of felony possession of a controlled substance, two counts of assault with a deadly weapon on a governmental official, and habitual felon. At a jury trial, defendant was convicted of all charges. The trial court sentenced defendant to imprisonment for a term of eleven and one-quarter years to fourteen and one-quarter years. It is from this conviction that defendant appeals.

As an initial matter, we note that defendant's brief contains arguments supporting only three of the original five assignments of error on appeal. The two omitted assignments of error are deemed abandoned pursuant to N.C. R. App. P. 28(b)(5) (2004). We therefore limit our review to those assignments of error properly preserved by defendant for appeal.

The issues presented on appeal are whether the trial court erred by (I) denying defendant's motions to dismiss the charges of assault with a deadly weapon on a governmental official at the close of the State's evidence and at the close of all evidence; and (II) instructing the jury that the dog was under defendant's control.

[1] Defendant first argues that the trial court should have granted his motions to dismiss the two counts of assault with a deadly weapon on a governmental official due to insufficiency of the evidence. Defendant contends that a dog does not satisfy the deadly weapon element of the crime, and thus the State failed to prove the charges against defendant. We disagree.

In ruling on a motion to dismiss based on insufficiency of evidence, "the trial court must determine whether there is substantial evidence of each element of the offense charged." *State v. Bullard,* 312 N.C. 129, 160, 322 S.E.2d 370, 387 (1984). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith,* 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980) (citations omitted). When reviewing the evidence, the trial court must consider all evidence "in the light most favorable to the prosecution, granting the State the benefit of every reasonable inference." *State v. Brown,* 310 N.C. 563, 566, 313 S.E.2d 585, 587 (1984).

Defendant argues that there was no substantial evidence to prove the "deadly weapon" element of the assault charges. North Carolina General Statute § 14-34.2 provides the following:

[A]ny person who commits an assault with a firearm or any other deadly weapon upon an officer or employee of the State or of any political subdivision of the State . . . in the performance of his duties shall be guilty of a Class F felony.

N.C. Gen. Stat. § 14-34.2 (2003). The term "deadly weapon" is defined at common law as any instrument which can produce death or great bodily harm, depending on the circumstances of its use. *State v. Parker*, 7 N.C. App. 191, 195-96, 171 S.E.2d 665, 667-68 (1970); *State v. Palmer*, 293 N.C. 633, 642-44, 239 S.E.2d 406, 412-13 (1977). While the question of a dog as a deadly weapon is an issue of first impression for this state, other states have found that dogs can be considered dangerous weapons when ordered to attack other humans, including police officers. *See Morris v. State*, 722 So. 2d 849 (Fla. 1998) *and State v. Sinks*, 483 N.W.2d 286 (Wis. 1992).

In North Carolina, when determining whether something other than a firearm is considered a deadly weapon, the following important factors are examined: "the nature of the instrument, the manner in which defendant used it or threatened to use it, and in some cases the victim's perception of the instrument and its use." *State v. Peacock*, 313 N.C. 554, 563, 330 S.E.2d 190, 196 (1985). Thus, the dog in the case *sub judice* could be considered a deadly weapon not only if it was deadly by its nature, but also if it was used by defendant in a deadly manner or if the police officers perceived the dog to be deadly in its use.

Guided by the foregoing principles, we conclude that there is substantial evidence from which the jury could find that defendant used the dog as a deadly weapon. The State's evidence tended to show that defendant instigated the dog's attack on the police officers by pushing the dog toward Officer Linstad and ordering it to bite him. As a result of defendant's actions, the dog bit Officer Lindstad and Officer Queen, causing injury to both officers. Officer Queen viewed the threat to him by the dog to be so great that he shot the dog three times. Defendant presented no evidence to rebut the State's evidence regarding his use of the dog. Thus, we hold that there was sufficient evidence to present this question to the jury, and therefore the trial court did not err in denying defendant's motions to dismiss.

[2] Defendant also assigns error to the instruction by the trial court to the jury that the dog was under defendant's control, arguing that such a statement was prejudicial. The State notes in its brief that "no objection was made at trial, either at the conference on jury instruc-

tions with the attorneys or after the instructions had been given to the jury . . . . Neither has Defendant identified the instruction as plain error. Therefore, this issue cannot be raised on appeal." We agree with the State.

"A party may not assign as error any portion of the jury charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly that to which he objects and the grounds of his objection . . ." N.C. App. R. 10(b)(2) (2004). "In criminal cases, a question which was not preserved by objection noted at trial and which is not deemed preserved by rule or law without any such action, nevertheless may be made the basis of an assignment of error where the judicial action questioned is *specifically and distinctly contended to amount to plain error.*" N.C. App. R. 10(c)(4) (2004) (emphasis added). Defendant neither objected to the jury instructions at trial, nor does defendant contend in his brief that the jury instruction amounted to plain error. Therefore, defendant has waived this assignment of error.

No error.

Judge BRYANT concurs.

Judge ELMORE dissents.

ELMORE, Judge, dissenting.

I respectfully dissent for the following reasons: first, even viewing the evidence in a light most favorable to the State, the facts are insufficient to support a conclusion that the dog was under defendant's control and should not have been considered a deadly weapon as a matter of law; and second, the jury instructions were inappropriate and prejudicial. This being a case of first impression, as noted by the majority, I am unpersuaded that the facts of this case are sufficient to establish the rule that in such a situation a dog is a deadly weapon.

The majority cites to cases from other states since this is a case of first impression for our courts. The other states which have ruled on this issue and found that a dog may be a deadly weapon, however, have done so with far clearer factual situations.

In *Morris v. State*, 722 So. 2d 849, 23 Fla. L. Weekly D 2563 (1998) (per curiam), the Court of Appeal of Florida, first district, was

presented with a case in which the dog was a large mixed breed resembling a Rottweiler, apparently owned by the defendant, and commanded to "sic" the officer. The issues of relative size of the dog to the victim and ownership and control of the dog by the defendant are distinguishable from the present case. In the present case, the defendant did not own or control the dog, which was smaller in proportion to the victim.

In *People v. Nealis*, 232 Cal. App. 3d Supp. 1, 283 Cal. Rptr. 376 (1991), the Appellate Department, Superior Court of California, Los Angeles, decided a case in which the defendant-appellant brought a Doberman Pinscher in her car to a parking lot where she commanded the dog to attack the victim and his girlfriend repeatedly. The defendant also grabbed the girlfriend by the throat and scratched her, and would not command the dog to cease the attack. The California court considered the relevant factors to be the dog's training to attack and the dog's relative size to the victim. In that case, the court found that the dog was trained to attack on command, unlike the dog in the present case. The dog was also larger and stronger relative to the female victim than the dog in the case at bar, which was a medium sized mixed breed relative to an armed male police officer.

In *State v. Bowers*, 239 Kan. 417, 721 P.2d 268 (1986), the Kansas Supreme Court decided a case in which two Doberman Pinschers were released to attack two police officers in the process of handcuffing the defendant. The defendant had warned the officers that the dogs were vicious and would "rip out the officers' 'guts' and kill them." *Bowers*, 239 Kan. at 419, 721 P.2d at 270. The defendant in the present case made no such warning, and the dog in this case was smaller and had no reputation for viciousness. There was also only one dog in the present case.

In *State v. Bodoh*, 226 Wis. 2d 718, 595 N.W.2d 330 (1999), the Wisconsin Supreme Court was presented with a case in which the defendant was convicted of negligent handling of a dangerous weapon when his two Rottweilers attacked a fourteen-year-old boy on a bicycle. In *State v. Sinks*, 168 Wis. 2d 245, 483 N.W.2d 286 (1992), the Court of Appeals of Wisconsin decided a case in which the defendant used a Doberman Pinscher to guard his victim, a female. He also used a knife, which was at all relevant times within his reach. In the case at bar, the dog was not as powerful relative to the victim and the defendant had no additional deadly weapon.

In *People v. Kay*, 121 Mich. App. 438, 328 N.W.2d 424 (1982), the Court of Appeals of Michigan decided a case in which the defendant commanded his German Shepherd to attack two store employees who followed him out of the store to his van, where the dog was, and accused him of stealing merchandise. Upon command, the dog lunged at one man's face. The Michigan court reasoned by analogy to a New York case in which the New York court had found that the dangerous weapon statute "did not exclude large dogs trained to attack." *Kay*, 121 Mich. App. at 443, 328 N.W.2d at 426. The Michigan court ruled that an animate object could be a dangerous weapon on those facts.

In *Commonwealth v. Tarrant*, 2 Mass. App. Ct. 483, 314 N.E.2d 448 (1974), the Appeals Court of Massachusetts, Suffolk, found that defendant used a dangerous weapon when he used a medium-sized German Shepherd mix, and also carried a knife. While the dog in this case was the closest to the dog in the present case, the fact that the defendant also wielded a knife sets the case apart. The defendant in the present case did not have any weapon on his person, nor did he attempt to use any object to assault the officers.

In all the above referenced cases, the various courts found that a dog may be a deadly weapon in situations markedly different from the situation in the case at bar. In the present case, the dog was a medium-sized German Shepherd mix. Defendant was not the dog's owner, and the dog was not trained to respond to commands. The dog was not a guard dog or a vicious dog, but only a pet, according to the owner's testimony. The defendant fled the police officers into a nearby familiar backyard, that of his sister. He ran to the area where the dog was tied up. The dog attacked the officer when the officer struggled with the defendant within the radius of the dog's tether. The facts do not indicate that the position was clear of the dog in defense and under the control of the defendant. The dog easily could have been guarding his territory, into which the officers had chased defendant. While I agree that a dog may be a deadly weapon in certain cases, the facts of the present case are not persuasive enough to establish that principle in our case law.

Moreover, the jury instructions, which repeatedly referred to "the dog under [defendant's] control" were entirely inappropriate. Although the defendant did not properly preserve this issue for consideration by our Court, this taken together with the unpersuasive facts of this case cause me to believe that the jury was prejudiced by the trial court's words, and that the facts alone do not support the

jury's verdicts. For this reason, I would grant a new trial on the issue discussed above.