160 P.3d 55 (2007)
STATE of Washington, Respondent,
v.
Robbie Philip HOELDT, Appellant.
No. 34894-2-II.
Court of Appeals of Washington, Division 2.
June 12, 2007.
John A. Hays, Attorney at Law, Longview, WA, for Appellant.
Michael C. Kinnie, Attorney at Law, Vancouver, WA, for Respondent.

PART PUBLISHED OPINION
ARMSTRONG, P.J.
¶ 1 Robbie Hoeldt appeals his conviction for second degree assault with a deadly weapon based on his pit bull's attack on a police officer. He argues that the State failed to prove that his pit bull was a "deadly weapon." Hoeldt also argues that his counsel *56 was ineffective for failing to object to the police officer's testimony that Hoeldt intended the dog to attack by giving a hand motion. We hold that the dog, as used, fits the statutory definition of a deadly weapon and that the officer's testimony was not error. Accordingly, we affirm.

FACTS
¶ 2 Vancouver Police Detective Bryan Acee and Officer Brent Donaldson went to Robbie Hoeldt's home to serve an outstanding arrest warrant. Detective Acee approached the partially opened door and knocked. According to Detective Acee, the house was dark, but with his flashlight, he could see Hoeldt standing about 25 feet away, holding what looked like a large pit bull by either the collar or neck.
¶ 3 The dog started barking and growling at Detective Acee. Hoeldt motioned with his arm and the dog charged toward Detective Acee. Acee retreated, but when the dog lunged at his throat and chest, Detective Acee shot and killed him.
¶ 4 Hoeldt described the incident differently. He testified that Detective Acee entered his house unannounced. Detective Acee made Hoeldt put his hands on his head and asked where the dog was. Before Hoeldt could answer, his dog ran around to the front door, and Detective Acee shot him.
¶ 5 The State charged Hoeldt with one count of third degree assault and one count of second degree assault with a deadly weapon, his pit bull. The trial court instructed the jury that a "deadly weapon" included:
any weapon, device, instrument, substance, or article, which under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or substantial bodily harm.
Clerk's Papers (CP) at 52. The jury convicted Hoeldt of second degree assault with a deadly weapon, as well as third degree assault.

ANALYSIS

I. SUFFICIENCY OF EVIDENCE
A. Standard of Review
¶ 6 Hoeldt claims the State did not prove the "deadly weapon" element of his assault conviction. Evidence is sufficient to support a conviction if, viewed in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. State v. Salinas, 119 Wash.2d 192, 201, 829 P.2d 1068 (1992) (citing State v. Green, 94 Wash.2d 216, 220-22, 616 P.2d 628 (1980)). We draw all reasonable inferences from the evidence in the State's favor when testing for sufficient evidence. Salinas, 119 Wash.2d at 201, 829 P.2d 1068 (citing State v. Partin, 88 Wash.2d 899, 906-07, 567 P.2d 1136 (1977)). The State bears the burden of proving all elements of a crime beyond a reasonable doubt. State v. Teal, 152 Wash.2d 333, 337, 96 P.3d 974 (2004).
¶ 7 But the question is not whether the evidence is sufficient to support the State's theory of the case. The police officer's testimony more than adequately establishes the State's theory. Rather, the question is whether, assuming the truth of the State's evidence, the pit bull qualified as a deadly weapon within the statutory meaning, a legal question that we review de novo. See State v. McCormack, 117 Wash.2d 141, 143, 812 P.2d 483 (1991).
B. The Pit Bull as a "Deadly Weapon"
¶ 8 Hoeldt contends that a pit bull is not a "weapon, device, instrument, article, or substance." Br. of Appellant at 12. By listing specific categories of "deadly weapons," according to Hoeldt, the legislature intended to exclude all other things, including dogs.
¶ 9 Whether a dog can be a deadly weapon is an issue of first impression in Washington courts. A deadly weapon is:
any explosive or loaded or unloaded firearm, and shall include any other weapon, device, instrument, article, or substance, including a "vehicle" as defined in this section, which, under the circumstances in which it is used, attempted to be used, or *57 threatened to be used, is readily capable of causing death or substantial bodily harm.
RCW 9A.04.110(6) (emphasis added). The common definition of "instrument" is a "means whereby something is achieved, performed, or furthered." WEBSTER'S THIRD NEW INT'L DICTIONARY at 1172 (2002).
¶ 10 Other jurisdictions have ruled that a dog can qualify as an "instrument" that may be used as a deadly weapon in an assault. See Fern L. Kletter, Annotation, Dog as Deadly or Dangerous Weapon for Purposes of Statutes Aggravating Offenses such as Assault and Robbery, 124 A.L.R. 5th 657 (2004) (finding that the majority of jurisdictions hold general definitions of "deadly weapons" should be broadly construed to include dogs); see also Duke v. State, 77 Ark. App. 263, 272, 72 S.W.3d 907 (2002) (holding that where a dog is clearly capable of physical harm, the fact finder could reasonably infer that it was used as a deadly weapon); Morris v. State, 722 So.2d 849, 850-51 (Fla. Dist.Ct.App.1998) (holding that dogs are "deadly weapons" when trained and used as "instruments" to cause great bodily harm); People v. Kay, 121 Mich.App. 438, 443, 328 N.W.2d 424 (1982) (finding the statutory definition for "deadly weapons" does not exclude animate objects, such as dogs, used for dangerous purposes); State v. Bodoh, 226 Wis.2d 718, 726-27, 595 N.W.2d 330 (1999) (holding that a dog may constitute a "dangerous weapon" where it is used as an "instrumentality" likely to cause great bodily harm). But see People v. Torrez, 86 Misc.2d 369, 372-73, 382 N.Y.S.2d 233 (Sup.Ct.1976) (holding that a dog could qualify as a "dangerous instrument," but not a "deadly weapon" within the meaning of New York's penal code).
¶ 11 In a recent North Carolina case, the defendant used a dog to attack police officers, forcing them to shoot the dog in self-defense. State v. Cook, 164 N.C.App. 139, 140, 594 S.E.2d 819 (Ct.App.2004). The court, applying the common law definition of a deadly weapon as "any instrument which can produce death or great bodily harm, depending on the circumstances of its use," held that a dog, as the defendant used it, could be a deadly weapon and that the evidence was sufficient to show such use. Cook, 164 N.C.App. at 142, 594 S.E.2d 819 (citing State v. Parker, 7 N.C.App. 191, 195-96, 171 S.E.2d 665 (1970)).
¶ 12 Because a dog is an instrument that can be used to cause death or substantial bodily harm, we hold that a dog can be a "deadly weapon" under RCW 9A.04.110(6).
C. Circumstances of Use
¶ 13 An instrument that is not defined as deadly weapon per se may still meet the statutory definition of "deadly weapon" if it is used in a manner "capable of causing . . . substantial bodily [harm]." State v. Shilling, 77 Wash.App. 166, 171, 889 P.2d 948 (1995) (quoting RCW 9A.04.110(6)) (finding that a bar glass was used as a deadly weapon). In measuring the manner of use, we look at the assailant's intent, his ability to cause substantial injuries, the degree of force, and the potential or actual injuries inflicted. State v. Barragan, 102 Wash.App. 754, 761, 9 P.3d 942 (2000) (holding that even though the defendant missed, a pencil used to attack the victim was intended to be deadly weapon).
¶ 14 The evidence here established that Hoeldt used his pit bull as a deadly weapon. Detective Acee described a large, powerful dog that was barking and growling at him. Hoeldt was holding the dog by its neck or collar, and when Hoeldt released the dog, it charged Detective Acee, lunging at his throat and chest. A large, powerful dog that, by training or temperament, attacks a person in this manner when intentionally released or directed to do so by its handler, meets the instrumentality "as used" definition of deadly weapon.
¶ 15 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
We concur: HUNT and PENOYAR, JJ.